UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

DAHLEN KOK HAW WEE,

  Plaintiff

v.

MADALUXE GROUP, LLC,

  Defendant

Docket No. _____

## COMPLAINT

NOW COMES plaintiff Dahlen Kok Haw Wee ("Dahlen"), a New York resident, and brings this action for breach of contract, promissory estoppel and unjust enrichment against Madaluxe Group, LLC ("Madaluxe"), a California LLC doing business in New York. As set forth below, Madaluxe contracted with Dahlen in New York for a full fashion photography shoot, a video shoot, and post-production editing services. Dahlen did the work in a good and professional manner. Madaluxe was very satisfied with the services and continues to use Dahlen's work product through today, but nonetheless Madaluxe has failed and refused to pay the full charges, without justification or cause. This action ensues.

## PARTIES

1. Dahlen is a fashion photographer, creative director, film director and editor living and working in New York City.

2. Madaluxe is a Limited Liability Company incorporated in California with headquarters at 1760 Apollo Court, Seal Beach, California. It also has offices at 1370 Broadway, Floor 15, New York, New York, 10018. Madaluxe is a marketer and distributor of luxury and fashion brands, and maintains several e-commerce websites.

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action based upon diversity of citizenship between plaintiff and defendant, and the amount in controversy exceeds $75,000. See 28 U.S.C. § 1332(a). Further, the defendant is actively doing business in New York and has a physical office in New York. This case arises out of an agreement entered into in New York, and the work was performed almost exclusively in New York.

4. Venue is proper in this case pursuant to 18 U.S.C. §1391 and §1965 because upon information and belief at all times relevant hereto the defendant conducted continuous and systematic business in New York, and a substantial portion of the acts and omissions referenced below took place in, or were direct from, this judicial district.

## FACTS

5. Madaluxe hired Dahlen to create and direct two photography and video campaigns. One was for Madaluxe to showcase luxury products on its Madaluxe Vault webpage (see www.MadaluxeVault.com), and the other was for use in its corporate branding (see www.MadaluxeGroup.com).

6. Dahlen worked with Sandra Sholl ("Sholl"), the Chief Executive Officer of Madaluxe, and Julian Nieves ("Nieves"), the Chief Design Officer and Chief Marketing Officer, on nearly all aspects of the work.

7. Dahlen has known Mr. Nieves for over twenty years, and they have worked together professionally on several other creative projects.

8. Dahlen discussed with Ms. Sholl and Mr. Nieves the costs involved with high quality photography and video, including retouching and editing. Ms. Sholl and Mr. Nieves

approved all of the charges set forth below.

9. For more than one month prior to the photography shoots, Dahlen worked on a daily basis with both Ms. Sholl and Mr. Nieves. Ms. Sholl and Mr. Nieves approved all or nearly all of the creative and artistic decisions, in advance.

10. At the request of Ms. Sholl and Mr. Nieves, Dahlen did a casting call for models at Madaluxe's headquarters, and brought approximately many models into Madaluxe's headquarters for the scrutiny and approval of Ms. Sholl and Mr. Nieves.

11. Dahlen then oversaw two full days of photography in New York City with the fashion models whom had been approved by Ms. Sholl and Mr. Nieves. Dahlen also oversaw and directed various clothing/wardrobe handlers and production assistants.

12. The first day of photography was on December 7, 2019, and took place at 500 Park Avenue, 23rd Floor, New York, New York.

13. The second day of photography was the next day, December 8, 2019, and took place at Greystone Court, 170 Shonnard Terrace, Yonkers, New York. All filing approvals were properly applied for and received by the City of New York.

14. As Mr. Nieves subsequently stated: "The shoot was two days, but we managed to do four days' worth of photographing and filming in just two days. Dahlen worked from the early morning hours until the late evening hours to make sure the shoot hits the company's benchmark for production."

15. Mr. Nieves explained the breadth of work that Madaluxe wanted from Dahlen:

"We prepped for over a month to shoot the new campaign for Madaluxe Vault and Madaluxe Group. The idea was to create two separate campaigns. One was for the marketing of the products on the MadaluxeVault.com shopping website,

and the other was for the branding of the Madaluxe Group corporation. The idea was to create visuals that embodied the concept of Madaluxe being a true luxury affordable fashion destination for the consumer to become aware of Madaluxe, the company. Madaluxe's site needed an overhaul as it was using stock photography and occasionally simple still life images. The idea was to invigorate the site as a new credible one-stop luxury shop destination. Dahlen worked seven days a week with me for over a month to prepare and coordinate the shoot."

16. As part of the work product, and in anticipation of being paid, Dahlen paid professionals including a video editor and at least two photography assistants at all times.

17. After the work was done and the products were delivered, Ms. Sholl and Mr. Nieves expressed great appreciation to Dahlen and were very satisfied with Dahlen's work.

18. Dahlen worked on the Madaluxe project almost full-time for eight months, to the exclusion of other work.

19. Ms. Sholl stated to Dahlen that the photography was of "billboard quality" that she wanted to use Dahlen's videos for television commercials.

20. As Nieves subsequently confirmed: "[Dahlen's] retouching was of the highest standard and superb quality; billboard and magazine ready as per instruction by upper management… Madaluxe was highly pleased and thrilled with Dahlen's work, performance, and dedication to these projects."

21. Madaluxe has used Dahlen's work on its websites since the day Dahlen delivered those images and videos.

22. Indeed, after the images were delivered, Ms. Sholl and the Vice President of Digital Content at Madaluxe decided to expand the usage of them, and the model rates were renegotiated upwards.

23. However, despite being very satisfied, Madaluxe has not paid Dahlen what was owed. Dahlen sent invoices on March 9, 2020, April 9, 2020, June 1, 2020 and July 17, 2020, without success. Dahlen made clear that late charges would accrue if the payments were not made, as is standard in the industry.

24. The amounts due to Dahlen are as follows:

| | |
|---|---|
| Advertising shoot, preparation work and six months' usage fee: | $106,000 |
| Creative edits: | $48,038 |
| Production of twelve films, plus five months' worth of retouching of images: | $78,657 |
| Additional six months' usage for website/social media: | $40,000 |

25. For this work, Madaluxe paid Dahlen $10,000 on or about July 3, 2020, and $10,019 on January 29, 2021, but the balance remains outstanding. Thus, the total amount outstanding is $252,676, plus late fees and interest.

26. All of these charges were approved in advance by Madaluxe.

27. Upon information and belief, Madaluxe has also been using Dahlen's images and films for other commercial, social media and advertising purposes without paying compensation, and thus the amounts owed may increase.

28. In order to resolve this matter in good faith prior to the filing of this litigation, Dahlen provided to Madaluxe no fewer than 1,414 pages worth of work product and correspondence, demonstrating the hard work performed and the products delivered, but to no avail. This action ensues.

## COUNT I
## BREACH OF CONTRACT

29. Dahlen realleges and incorporates by reference the foregoing paragraphs as if specifically set forth in full herein.

30. Dahlen did all of the things and performed all of the services required to be performed under the terms of the parties' agreement, as set forth above.

31. Madaluxe breached its agreement by failing to pay Dahlen the amounts set forth above.

32. As a result of said breach of contract, Dahlen has suffered substantial damages as hereinbefore alleged.

## COUNT II
## UNJUST ENRICHMENT/*QUANTUM MERUIT*

33. Dahlen realleges and incorporates by reference the foregoing paragraphs as if specifically set forth in full herein.

34. Madaluxe has been unjustly enriched by its conduct at the expense of Dahlen as hereinbefore alleged, including but not limited to by receiving Dahlen's services without then paying just compensation therefor. Dahlen expected compensation for the work provided, but was not paid. Madaluxe was very satisfied with Dahlen's images and work product, and continues to use Dahlen's images and work product without paying for same. In equity and good conscience, Madaluxe should be required to required to pay for Dahlen's services as set forth above, in *quantum meruit*. Dahlen has suffered damages as set forth above.

## COUNT III
## PROMISSORY ESTOPPEL

35. Dahlen realleges and incorporates by reference all paragraphs set forth above, as if specifically set forth in full herein.

36. Madaluxe's clear promises to pay as set forth above were promises which it reasonably and foreseeably should have expected would induce action on the part of Dahlen and which did, in fact, induce such action on Dahlen's part. Dahlen has suffered substantially as a result. As a result of Dahlen's reasonable reliance on Madaluxe's promises, such promises must be enforced to avoid injustice and Madaluxe should be estopped from denying their enforceability.

37. As a result of Madaluxe's breaches of its contract by estoppel, Dahlen has suffered substantial damages as hereinbefore alleged.

## JURY CLAIM

Dahlen claims a trial by jury for all of the issues so triable.

WHEREFORE, DAHLEN RESPECTFULLY DEMANDS THAT THIS HONORABLE COURT:

1. Order Madaluxe to pay Dahlen such damages as have been sustained in consequence of its violations of law and equity, in an amount no less than $252,676 plus late fees and interest from the date such sums were due;

2. Order Madaluxe to pay Dahlen's costs, reasonable attorneys' fees and interest; and

3. Grant such further relief as may be equitable and just.

Respectfully submitted,

										DAHLEN KOK HAN WEE,

										Plaintiff

										By:

										*/s/ Jonathan D. Plaut*
										Jonathan D. Plaut
										New York Bar No.: 4509212
										COHAN RASNICK PLAUT LLP
										One State Street, 12th Floor
										Boston, MA 02109
										(617) 451-3200
										jdplaut@chardonlaw.com

Dated: May 21, 2021